IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

VICTORIA H.,[1]                                          Case No. 6:23-cv-00753-JR

        Plaintiff,                                   OPINION AND ORDER

        v.

COMMISSIONER OF SOCIAL
SECURITY ADMINISTRATION,

        Defendant.

RUSSO, Magistrate Judge:

        Plaintiff Victoria H. brings this action for judicial review of the final decision of the Commissioner of Social Security ("Commissioner") denying her applications for Title II Disability Insurance Benefits and Title XVI Social Security Income under the Social Security Act. All parties have consented to allow a Magistrate Judge enter final orders and judgement in this case in accordance with Fed. R. Civ. P. 73 and 28 U.S.C. § 636(c). For the reasons set forth below, the Commissioner's decision is reversed, and this case is remanded for further proceedings.

---

[1] In the interest of privacy, this opinion uses only the first name and initial of the last name of the non-governmental party or parties in this case. Where applicable, this opinion uses the same designation for a non-governmental party's immediate family member.

## PROCEDURAL BACKGROUND

Born in November 1961, plaintiff alleges disability beginning December 15, 2019, due to major depressive disorder ("MDD"), generalized anxiety disorder ("GAD"), scoliosis, fibromyalgia, diabetes mellitus type 2, diabetic retinopathy in both eyes, and diabetic neuropathy in both feet and both hands. Tr. 63, 79. Her applications were denied initially and upon reconsideration. Tr. 62-93, 96-135. On January 13, 2022, a hearing was held before an Administrative Law Judge ("ALJ"), wherein plaintiff was represented by counsel and testified, as did a vocational expert ("VE"). Tr. 34-61. On March 2, 2022, the ALJ issued a decision finding plaintiff not disabled. Tr. 15-28. After the Appeals Council denied her request for review, plaintiff filed a complaint in this Court. Tr. 1-6.

## THE ALJ'S FINDINGS

At step one of the five step sequential evaluation process, the ALJ found plaintiff had not engaged in substantial gainful activity since the alleged onset date. Tr. 17. At step two, the ALJ determined the following impairments were medically determinable and severe: degenerative disc disease of the lumbar spine, "unspecified osteoarthritis," degenerative disc disease of the cervical spine, neuropathy, and diabetes. Tr. 17-18. At step three, the ALJ found plaintiff's impairments, either singly or in combination, did not meet or equal the requirements of a listed impairment. Tr. 20.

Because she did not establish presumptive disability at step three, the ALJ continued to evaluate how plaintiff's impairments affected her ability to work. The ALJ resolved that plaintiff had the residual function capacity ("RFC") to perform light work as defined in 20 C.F.R. § 404.1567(b) and 20 C.F.R. § 416.967(b) except:

> [She] can only occasionally climb, balance, stoop, kneel, crouch or crawl. She can only frequently reach overhead with the left upper extremity.

Tr. 21.

At step four, considering the RFC finding, the ALJ found plaintiff able to perform her past relevant work as an office manager. Tr. 27. Accordingly, the ALJ determined that plaintiff was not disabled. Tr. 27-28.

## DISCUSSION

Plaintiff argues the ALJ erred by: (1) discounting plaintiff's subjective complaints without substantial evidence; (2) failing to include all of plaintiff's mental limitations in her RFC; and (3). improperly assessing her overhead reaching limitations. Pl.'s Opening Br. 1 (doc. 11).

## I.    Plaintiff's Testimony

Plaintiff contends the ALJ erred by discrediting her testimony concerning the extent of her physical impairments.[2] When a claimant has medically documented impairments that could reasonably be expected to produce some degree of the symptoms complained of, and the record contains no affirmative evidence of malingering, "the ALJ can reject the claimant's testimony about the severity of . . . symptoms only by offering specific, clear and convincing reasons for doing so." *Smolen v. Chater*, 80 F.3d 1273, 1281 (9th Cir. 1996) (internal citation omitted). A general assertion the claimant is not credible is insufficient; the ALJ must "state which . . . testimony is not credible and what evidence suggests the complaints are not credible." *Dodrill v. Shalala*, 12 F.3d 915, 918 (9th Cir. 1993). The reasons proffered must be "sufficiently specific to permit the reviewing court to conclude that the ALJ did not arbitrarily discredit the claimant's testimony." *Orteza v. Shalala*, 50 F.3d 748, 750 (9th Cir. 1995) (internal citation omitted).

---

[2] Plaintiff does allege error in the ALJ's consideration of the limitations related to her mental impairments, but not in the context of subjective symptom testimony. Pl.'s Opening Br. 13-17. The ALJ's assessment of plaintiff's mental impairments is discussed later in this opinion.

Thus, in formulating the RFC, the ALJ is not tasked with "examining an individual's character" or propensity for truthfulness, and instead assesses whether the claimant's subjective symptom statements are consistent with the record as a whole. SSR 16-3p, *available at* 2016 WL 1119029. If the ALJ's finding regarding the claimant's subjective symptom testimony is "supported by substantial evidence in the record, [the court] may not engage in second-guessing." *Thomas v. Barnhart*, 278 F.3d 947, 959 (9th Cir. 2002) (internal citation omitted).

At the hearing, plaintiff testified that she can only lift a gallon of milk because of the pain in her hands. Tr. 44. She explained that she "can't grip or lift more than a five-gallon milk and that's just carrying it with two hands…[her] hands lock up..." and she is "no longer able to type on a computer." *Id.* She testified that her hands "shake and cramp up or just the use of them is just not there any longer." *Id.*

In terms of work activity, plaintiff explained that she stopped working in 2018 as an office manager. Tr. 45. The ALJ asked her if she stopped working because of her move from Oregon to California, and plaintiff clarified that she stopped working because of her impairments. *Id.* Plaintiff explained she was not able to work a full eight-hour workday, and that she was only able to work "for a couple of hours" due to her pain. *Id.* She further testified that when doctors found Methicillin-resistant Staphylococcus aureus ("MRSA") on her kidneys, she had to take thirty days off because she was experiencing intense diarrhea and vomiting symptoms, and she was incredibly fatigued and septic. Tr. 46. She stated that after being off for thirty days, her company had to hire someone else, and she returned to work briefly only to train the new office manager. *Id.*

As to her neuropathy, she testified that her feet go numb and that she stumbles when she walks or stands for "very long." Tr. 47.  She testified that her ability to walk ranges from walking thirty minutes at a time up to an hour or two. *Id.* She explained that after walking, she needs to rest

fifteen to thirty minutes before walking again. *Id.* Regarding her fatigue, the ALJ repeatedly questioned her about how her medications affect her fatigue symptoms. Tr. 49-53. Plaintiff testified that she believes part of her fatigue is due to medication side effects Tr. 49 Plaintiff further explained that her doctor said fatigue could be a side effect, but the doctor didn't address the issue further. Tr. 49. At the end of her testimony, plaintiff explained that her symptoms wax and wane and that some days she feels "pretty good and able to be active" and other days she does not even get out of bed. Tr. 50.

After summarizing her hearing testimony, the ALJ determined that plaintiff's medically determinable impairments could reasonably be expected to produce some degree of symptoms, but her "statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely consistent with the medical evidence and other evidence in the record for the reasons explained in this decision." Tr. 25.

The ALJ's analysis of plaintiff's subjective symptom testimony is brief and insufficient, as it is only two paragraphs long and poorly cited. Tr. 25-26. With no citations to the record, the ALJ simply states that "physical examinations [have] consistently shown normal musculoskeletal function, though reduced ranges of motion findings justify a moderate exertional and postural limitation." Tr. 25. Again, without any citations to the record, the ALJ states that plaintiff's "diabetes treatment has changed over the past few years, but this reflects an overall improvement in her condition, which is deemed controlled by her providers and which she confirmed at the hearing." Tr. 25-26. The ALJ acknowledged plaintiff's fatigue, however, determined that "the nature and frequency of the complaints in the record do not appear to be of such a nature to be disabling." Tr. 26. The ALJ also found plaintiff's complaints of fatigue to be "inconsistent" although he cited to only one instance where plaintiff presented as "negative for fatigue." *Id.*

Page 5 – OPINION AND ORDER

This Court finds the ALJ mischaracterized the record in evaluating plaintiff's diabetes and neuropathy testimony. *See Reddick v. Chater,* 157 F.3d 715, 722-23 (9th Cir. 1998) (ALJ's "paraphrasing of record material" was "not entirely accurate regarding the content and tone of the record" and did not support an adverse credibility finding). Plaintiff did not confirm her diabetes was "controlled" at the hearing, instead, she explained she was "doing better with [her] diabetes" as she previously relied on insulin three to four times a day whereas she is now relying on insulin only once a week and metformin pills. Tr. 47. From 2019 to 2021 the record reflects that plaintiff's diabetes mellitus was poorly controlled resulting in immense pain in her hands and lower extremities. Tr. 404, 409, 416, 490, 505, 568, 630, 636, 647, 740, 830, 859. The treatment record from January 2021 even specifies that plaintiff's "diabetes mellitus was previously controlled until she had chemotherapy for breast cancer about [13] years ago and ever since then her [diabetes mellitus] has been uncontrolled." Tr. 568. A treatment note from June 2021 states that plaintiff's postprandial blood sugar level ("PPBG") was "well controlled after discontinuing mealtime insulin" but given that her fasting blood glucose ("FBG") is still slightly elevated she will increase her insulin glargine and Trulicity. Tr. 778. However, her PPBG is only one aspect of diabetes, and just because her PPBG is well controlled does not mean that her diabetes mellitus is well controlled overall. In fact, a treatment note from May 2021 states that plaintiff's hemoglobin A1C ("HbA1c") "is not at goal but improved" and "her FBG is elevated." Tr. 805. Since 2021, it remains unclear how "controlled" plaintiff's diabetes mellitus is and how it has affected the rest of her physical impairments. Regardless, the ALJ erred in failing to cite to the record to support the assumption that plaintiff's diabetes mellitus and neuropathy were well controlled.

As for plaintiff's fatigue, she presented at medical exams and denied fatigue three times. Tr. 398, 406, 422. However, all of these medical examinations occurred in 2019, and since 2020

plaintiff consistently presented with fatigue. Tr. 427, 445, 538, 621, 647, 678, 732, 860. Her fatigue ranged from intermittent to chronic, but nevertheless, the ALJ again mischaracterized the record by stating that plaintiff's fatigue symptoms were inconsistent. *Id.*

The ALJ failed to discuss plaintiff's other physical impairments when dismissing her subjective symptom testimony. Tr. 25-26. The ALJ mentioned plaintiff's overall musculoskeletal function was consistently normal "until early 2021" but the ALJ did not cite to anything in the record supporting this statement. Tr. 25. The record demonstrates that while plaintiff did present with normal musculoskeletal function on some exams, more often than not, she had a range of musculoskeletal complications from 2019 throughout 2021. In January 2019, plaintiff's bilateral base of her thumbs was tender Tr. 405. In February 2020, plaintiff complained of cervical spine stiffness and aching sharp pains. Tr. 679. In November 2020, plaintiff exhibited a decreased range of motion, weakness in her lower extremities, lower back pain, and weakness aggravated by walking or prolonged standing. Tr. 604. From November 2020 to September 2021, she was experiencing muscle spasms in her hands. Tr. 555, 581, 595, 747, 789, 813, 826. In October 2021, plaintiff had generalized joint pain as well as significant shoulder and neck pain which resulted in a limited range of motion. Tr. 732. It is evident the ALJ mischaracterized the record by stating that her musculoskeletal function was consistently normal until early 2021.

Overall, the ALJ's analysis of plaintiff's subjective symptom testimony is brief, mischaracterized, and unsupported by the record, including a lack of elaboration or citations to support his contentions. Therefore, the ALJ failed to provide a clear and convincing reason, supported by substantial evidence, for affording less weight to plaintiff's physical symptom testimony. The ALJ's decision is reversed as to this issue.

## II.    Plaintiff's Mental RFC

Plaintiff argues the ALJ failed to account for her mild limitation in concentrating, persisting, and maintaining pace in the RFC assessment. Pl.'s Opening Br. 8-13 (doc. 11).

The RFC is the maximum that a claimant can do despite his or her impairments. 20 C.F.R. §§ 404.1545, 416.945. In determining the RFC, the ALJ must consider limitations imposed by all of a claimant's impairments, even those that are not severe, and evaluate "all of the relevant medical and other evidence," including the claimant's testimony. SSR 96-8p, available at 1996 WL 374184. Limitations supported by substantial evidence must be incorporated into the RFC. *Osenbrock v. Apfel*, 240 F.3d 1157, 1163-65 (9th Cir. 2001).

Plaintiff's contention that any mild limitation in the paragraph B criteria must always result in a specific mental restriction in the RFC assessment is incorrect. First, the terms "mild" or even "moderate" do not "necessarily indicate a degree of limitation that must be expressly reflected in the RFC assessment." *Cruise v. Astrue*, 2012 WL 5037257, *8 (D. Or. Sept. 28, (2012), adopted by 2012 WL 4966462 (D. Or. Oct. 17, 2012) (citing *Hoopai v. Astrue*, 499 F.3d 1071, 1077 (9th Cir. 2007)); see also *Purdy v. Berryhill*, 2018 WL 452162, *12 (D. Hawaii Jan. 17, 2018) ("[u]nder Ninth Circuit precedent, the ALJ is under no obligation to include in the RFC assessment any limitations she finds at Steps 2 and 3") (collecting cases). Specifically, the mild, moderate, marked, or extreme limitations, in the four broad functional categories – i.e., interacting with others, adapting,or managing oneself, concentration, persistence, or pace, and understanding, remembering, or applying information – that are evaluated at steps two and three "are not an RFC assessment." SSR 96–8p, available at 1996 WL 374184; 20 C.F.R. § 404.1520a; *see also Snider v. Berryhill*, 2018 WL 344973, *4 (D. Or. 2018) ("it is the narrative written by the psychiatrist or psychologist" and "not the broad terms, such as 'moderately

limited,' in areas of functioning ... that adjudicators are to use as the [basis of the] RFC")
(citation and internal quotations omitted). As the Commissioner correctly points out, the Ninth
Circuit has also found no support for the proposition "that a severe mental impairment must
correspond to limitation on a claimant's ability to perform basic work activities." *Bray v.
Comm'r Soc. Sec.*, 554 F.3d 1219, 1228-29 (9th Cir. 2009). Here, as opposed to the facts in *Bray*,
plaintiff's mental impairments were non severe, suggesting even less need for any
correspondence between plaintiff's impairments and the specific limitations in her RFC.
Therefore, the fact that plaintiff has a mild limitation in concentration, persistence, or pace does
not, in and of itself, dictate the content of the determined RFC.

Second, and relatedly, the adequacy of the ALJ's RFC turns on whether it is consistent with
the medical evidence. *Stubbs–Danielson v. Astrue*, 539 F.3d 1169, 1173-74 (9th Cir. 2008); *see
also Osenbrock v. Apfel*, 240 F.3d 1157, 1163-65 (9th Cir. 2001) (only limitations supported by
substantial evidence must be incorporated into the RFC). The RFC assessment requires a more
detailed examination of all of plaintiff's limitations credited by the ALJ and supported by
substantial evidence. *See, e.g., Foster v. Colvin*, 6:12-cv-00698-HZ, 2013 WL 3994652, *4 (D.
Or. Aug. 2, 2013) (noting that ALJ's finding of mild limitations identified at step three does not
necessitate inclusion in RFC); *Swingle v. Colvin*, No. CV-15-00836-PHX-DGC, 2016 WL
1399362,*4-5 (D. Ariz. Apr. 11, 2016) (noting that *difficulties* at step three are not equivalent to
limitations employed in an RFC assessment).

Here, the ALJ thoroughly discussed plaintiff's alleged mental limitations. Alonie Butler,
Psy.D., examined plaintiff and concluded she had only mild limitations in a few areas of
functioning. Tr. 534-35. Dr. Butler's examination and the medical record were then reviewed by
Robert Liss, Ph.D, and E. Aquino-Caro, M.D, who found that plaintiff was only mildly limited in

her ability to concentrate, persist, and maintain pace. Tr. 70, 86, 108, 128, 149, 173. These same medical professionals identified no particular mental limitations as part of their residual functional capacity assessment. *Id.* The ALJ found all of these opinions' persuasive and consistent with the restrictions listed in the medical findings. Tr. 18-20. Specifically, the ALJ found these opinions consistent with plaintiff's lack of mental health treatment. Tr. 20. As a result, the ALJ did not designate any mental limitations in plaintiff's RFC. Tr. 21.

Furthermore, plaintiff does not identify any specific mental limitation the ALJ failed to account for. *See Valentine v. Comm'r Soc. Sec. Admin.*, 574 F.3d 685, 692 (9th Cir. 2009) (finding the Court must reject any invitation to find the ALJ failed to account for a plaintiff's impairment in an unspecified way.) Plaintiff alludes to the idea that she is not able to perform skilled work, however, Dr. Butler explicitly determined that plaintiff had no problem performing complex and detailed tasks, such as those found in skilled work. Tr. 534; Pl.'s Opening Br. 12-13 (doc. 11). The ALJ also acknowledged Dr. Butler's explanation that plaintiff's areas of mild mental impairment were a result of her physical pain rather than a psychiatric condition. Tr. 20 (citing Tr. 529-36).

The ALJ weighed the evidence and translated into the RFC all of plaintiff's mental limitations that were supported by substantial evidence and posed hypothetical questions to the VE consistent with that mental RFC. Accordingly, the Court concludes the ALJ did not err in formulating plaintiff's mental RFC that accounted for all of plaintiff's credible mental limitations, nor in posing hypothetical questions to the VE.[3] *See Sam B. v. Comm'r of Soc. Sec.*, No. 2:19-CV-00354-DWC, 2019 WL 5541347, at *4 (W.D. Wash. Oct. 28, 2019) ("[T]he RFC assessment and the hypothetical questions posed to the VE were properly based on the credible functional

---

[3] As discussed already and explained further in the last portion of this opinion, the RFC regarding plaintiff's physical impairments is incomplete given that the ALJ did not adequately address plaintiff's subjective symptom testimony.

Page 10 – OPINION AND ORDER

limitations contained in the record, and thus both the RFC assessment and the hypothetical question posed to the VE were proper."); *Diane M. v. Comm'r of Soc. Sec.*, No. 3:17-cv-01971-BR, 2018 WL 6440889, at *8 (D. Or. Dec. 6, 2018) ("[T]he Court concludes the ALJ did not err when he assessed plaintiff's RFC and he accounted for all credible limitations in his assessment.").

## III.    Plaintiff's Physical RFC and Remedy

Finally, plaintiff argues the ALJ's RFC is deficient because it fails to account for her subjective symptom statements regarding her overhead reaching limitations. As addressed herein, plaintiff is correct as to the latter given that the ALJ erred in evaluating plaintiff's subjective symptom testimony, and case law dictates that such an error was harmful. *See Nguyen v. Chater*, 100 F.3d 1462, 1466 n.3 (9th Cir. 1996) (VE's response to an incomplete hypothetical has "no evidentiary value") (citations and internal quotations omitted).

The question thus becomes the proper legal remedy. The decision whether to remand for further proceedings or for the immediate payment of benefits lies within the discretion of the court. *Harman v. Apfel*, 211 F.3d 1172, 1176-78 (9th Cir. 2000). The issue turns on the utility of further proceedings. A remand for an award of benefits is appropriate when no useful purpose would be served by further administrative proceedings or when the record has been fully developed and the evidence is insufficient to support the Commissioner's decision. *Treichler v. Comm'r of Soc. Sec. Admin.*, 775 F.3d 1090, 1090-1100 (9th Cir. 2014). The court may not award benefits punitively and must conduct a "credit-as-true" analysis on evidence that has been improperly rejected by the ALJ to determine if a claimant is disabled. *Strauss v. Comm'r of Soc. Sec. Admin.*, 635 F.3d 1135, 1138 (9th Cir. 2011); *see also Dominguez v. Colvin*, 808 F.3d 403, 407-08 (9th Cir. 2015) (summarizing the standard for determining the proper remedy).

Here, plaintiff does not pursue the immediate payment of benefits. *See* Pl.'s Opening Br. 17 (doc. 11) (plaintiff avers that remand for further administrative proceedings is the appropriate remedy). The Court agrees and finds there are ambiguities in the record that support the need for further proceedings.

It is evident that plaintiff's diabetes was problematic after her chemotherapy, however, the record suggests she was not following her medication regimen. Tr. 562, 567, 586, 778, 782. It remains unclear as to how much plaintiff's diabetes mellitus improved when she followed her regimen, and how her improvement affected her musculoskeletal function and other physical impairments. As for fibromyalgia, multiple providers found "no typical physical findings for fibromyalgia" and Dr. Roger Wagner, M.D. said it was unclear if she meets diagnostic criteria given that she simply complained of general pain. Tr. 127. Throughout the medical record plaintiff does complain of general pain, however, it is unclear what pain stems from her diabetes mellitus and neuropathy which has shown improvement, verses any pain occurring due to her degenerative disc disease which remains unchanged.

As such, further proceedings are required to resolve this case. *See Treichler*, 775 F.3d at 1099 (except in "rare circumstances," the proper remedy upon a finding of harmful error is to remand for further administrative proceedings). Given the improvement with treatment, coupled with the complex and longstanding nature of plaintiff's diabetes mellitus affecting her other conditions, consultation with a medical expert concerning her physical symptoms would be helpful. Therefore, upon remand, the ALJ must consult with a medical expert and, if necessary, reweigh the medical and other evidence of record, reformulate plaintiff's RFC, and obtain additional VE testimony.

**CONCLUSION**

For the reasons stated above, the Commissioner's decision is REVERSED, and this case is REMANDED for further proceedings.

IT IS SO ORDERED.

DATED this 22nd day of March, 2024.


_____
/s/ Jolie A. Russo
Jolie A. Russo
United States Magistrate Judge